Okay, oh my goodness, the last case of the day. Number 181310, United States v. Griffith. How are you, Mr. Tassif? I'm doing well, Your Honor, and it's certainly a privilege to be here today. It's been some time. I was thinking that. Where have you been? We've been involved in a number of matters pending in our district, including our district's first death penalty case, so I've been occupied on other matters. But thank you, Your Honor. It's good to be here, and may it please the Court. I'm George Tassif. I'm with the Federal Public Defender in Peoria, and I represent Scott Griffith. The procedural issues in this case stem from a record that is muddied, unfortunately, because so much was at stake for Mr. Griffith, the trial court, during the sentencing proceeding. And what's not really reflected in the briefing in the record is that, from the filings that the Court can see from the record in the case, the parties here briefed extensively the issue of the statutory enhancement based upon the 1984 misdemeanor conviction in Rock Island County. That prior misdemeanor conviction triggered a statutory enhancement that exposed Mr. Griffith to 15 to 40 years on Counts 1 and 2 and 10 to 20 on Count 3. These are receipt, distribution, and possession of child pornography offenses. So we really went full bore in challenging that, and all parties, including the Court, missed the fact that in the revised pre-sentence report, the probation officer posited, well, if the statutory enhancement applies, the guidelines are to count 324 and 405. If they don't, it's capped at 20 years. As we all know now, and as was brought to the Court's attention by the Government Counsel in sentencing, because there are three discrete counts here, three discrete separate offenses, the statutory maximum would be 60 years. So the guideline would be 324 to 405 could be applicable. Counsel, let me tell you what's bothering me. The transcript reflects that the judge, once this error was brought to her attention, the lack of clarity about whether the sentences would run consecutively. She says that just as if I ran it consecutively, I could impose a guideline-range sentence, which would be the 324 to 405 months. In other words, the statutory cap would be 60 years. The Government starts to interject. The Court talks over the Government and says, you know, do you want me to refine that? She's clearly, as I read the transcript, referring to that range. And she says, is that an accurate assessment? And you said yes. So I don't understand how that wasn't agreeing to that guideline range. The transcript reflects what I said. And what proceeded further, Your Honor, in the wake of my 3553A argument, where I asked for a variance and cited the guideline range that would apply and cited Dorvey and Jenkins and those cases that were relied upon in our memo. The Court then went on to make findings. And the Court stated, page 50 of the sentencing transcript, I don't find there is a good basis to apply the two-level computer enhancement. I discount that in almost all cases. The Court goes on to say that you should receive a four-level specific offense characteristic and then concludes, page 51, I think that so the variance, if you want to call it that, for my recalculated guidelines would be 37. But she was clearly talking about the 3553 factors at that point. Indeed. But she also used the phrase recalculated guidelines and 37, which with a three-point adjustment for acceptance of responsibility would drop it to 34. So with the criminal history Category 5 produces a range of 235 to 293. So the Court's rationale for a 240-month sentence here does not jive with the numbers. And the final benchmark that the Court was using to come up with the 240 months is not stated in the record. She doesn't need a benchmark. The sentence stands on its own without regard to the guidelines range. And what was going on in that latter discussion that you just referenced was clearly an attempt to explain her variance, her non-guideline sentence in guidelines terms, which district judges have the authority to do but probably should not do because of the confusion that it creates. And we've said that before, that departure analysis is obsolete. The judges don't have to peg their non-guideline sentences to the guidelines and percentages of discounts and how they might, in the exercise of their booker discretion under 3553A, knock off certain offense characteristics, et cetera. That just creates a great deal of confusion. And it's permissible but inadvisable. And that confusion was also present in the Tenth Circuit's case of Benoit that the government cites in its brief and we address in the reply, where in that case the Court made these recalculations by not counting specific offense characteristics points in a child porn case and actually reduced the guideline range of 40 months. And again, that was exactly the case that the government cites that we say that's exactly what happened here. And the Tenth Circuit said, okay, and that was... But this is not a new guidelines range. The guidelines range was 324 to 405. Everybody knew that. Everybody was alert to the mistake in saying that the guidelines cap is 240, which actually it was 240 per count for a total of 60. So it wasn't strictly speaking an error of law to say the guidelines cap was 240. It is per count once she knocked off the sentencing enhancement for the prior sexual abuse conviction. So it was a clarification. And the guidelines range remained constant throughout. Indeed, Your Honor's comments right there are consistent with the Statement of Reasons, Page 1, where the court notes the determination of the guideline range, total offense level 37, criminal history category 5, guideline range 240 months on each of counts 1 through 3. On each? That's the statutory cap per count. She can stack them. Indeed. So we stand on a record, Your Honor, that regrettably is muddied and that with all the math and with all the different shifting parts that flowed from the court's determination, a very important determination, that the statutory enhancement did not apply. That's why I asked and recommended a sentence for Mr. Griffith that's six years on each count to run concurrent. And much to our dismay, the court went on to impose 20 years per count. Now respectfully, I realize and acknowledge I'm swimming upstream against a very stiff current here. When we talk about substantive unreasonable sentences, but after 37 years of practicing law and 24 as a federal public defender, Scott Griffith, I respectfully submit, at age 54 in his state of health and given the unique facts of this case that are outlined in the brief, should not have received a 20-year sentence. I respectfully submit that under the Second Circuit's analysis of Dor V and then amplified recently by the Jenkins decision, 240 months is unreasonable and places Mr. Griffith in the same penalty range and at the higher stratum of the guidelines as a hands-on contact sex offender or a commercial producer of child pornography that simply does violence to the 3553A system. So I respectfully ask that the court vacate the sentence on the basis of Dor V and Jenkins and Grover because two circuits from our federal system have held that sentences imposed at the range that Mr. Griffith was sentenced are not just sentences. So with that, I have no further argument. Thank you. Okay, here comes our caboose. Hi, Mr. Knight. Good morning, Judge. Good afternoon, Judge. How are you? Doing well, thank you. May it please the court, Scott Griffith was sentenced pursuant to an agreed upon guideline range. He received a sentence that was substantively reasonable and this court should affirm the judgment of the district court. I just want to make one point and it is when I read the transcript as a whole, I saw no waiver by the defendant regarding his objections to the sentence at best or at worst. He's agreeing at page 37 and 38 that the statutory cap was stated incorrectly. He was conceding that the cap was 60 years, not 20. And so I don't think that there was any agreement to a guideline sentence of 324 to 405 months. Respectfully, Your Honor, I submit that's intention with the quote from the district judge that Judge Barrett articulated during her conversation with my friend from the other side. The court explicitly stated it couldn't pose a guideline range sentence which would be the 324 to 405 months. I'd ask the court to notice that during that exchange with Judge Barrett, it seems that Mr. Tassif is walking away from the position they took in the reply brief that in fact Mr. Tassif was assenting to a latter proposition that reflects Your Honor's question. Yeah. I think that concession should also be viewed in the context of the party's sentencing memoranda wherein the defendant explicitly noted that the application of 2G 2.2 yielded a guideline range of 324 to 405 months. That holistic examination of the record, I think, yields inexorably to the conclusion that the defendant understood that his guideline range was that 324 to 405 months. I'd also like to follow up on a question that Judge Sykes asked Mr. Tassif. There was a conversation regarding the inadvisability of district courts couching their discussion of a variance through the prism of a guidelines range. There are guidelines enhancements, and I think that generally that's a true statement, and Judge Sykes, you're right to say that there's case law in support of that. I think in this particular case, to the extent that was inadvisable, it was a misstep that was invited by defendant's own argument. Defendant spent considerable time attacking the legitimacy of 2G 2.2 itself, and to the extent the district court felt compelled to give a more fulsome discussion of why those enhancements applied to this defendant, I think that concern animated that particular discussion. I think, Judge Sykes, you accurately characterized that as being a discussion of the variance the court intended to impose, and not, as defendant suggests, an attempt to revisit the guidelines calculation. Well, it was also a response, as I read the transcript, to the broader argument that this particular guideline is bad empirical science. But the further quantification by saying, okay, I'm going to knock off this many points for this and this many points for this, and trying to key it to the inputs into this particular guidelines range is what gets district judges in trouble on review, because it does make it look like they're recalculating the range, and that's confusing because that's not what's going on. I think that that last clause is the one I like to hitch my wagon to, Judge, which is that's not what was going on here. And I think that's the fairest reading of the record, and I submit that it was not procedural error, and if it was, it wasn't plain. I'd also like to just direct the court's attention to a case that we cited in our brief regarding the legitimacy of 2G2.2, and that's United States v. McLaughlin, authored by Judge Rovner, wherein this court took countenance of some of the arguments regarding the legitimacy, or relative lack thereof, of 2G2.2 relative to the other perhaps more empirically based guideline sections, and said that district judges were free to apply 2G2.2. It was due no less deference necessarily than any other guideline section, and I submit that Judge Darrow applied it reasonably in this case. Particularly with respect to, I think, Your Honors, if you don't have any further questions regarding defendant's procedural arguments, I'd like to just briefly address substance. The sentence imposed here was substantively reasonable. And it was made in response to literally every argument on substance that the defendant's now making on appeal. Defendant on appeal suggests that given his age, his criminal history, his particular life circumstances, his sentence was substantively unreasonable. But the problem with that argument, Your Honors, is that the district judge heard every one of those arguments and fashioned its sentence accordingly. The district judge was particularly concerned about the recidivist risk that this defendant posed. The court took countenance of the fact that the defendant had a prior hands-on sexual offense with a child in the 1980s. And while the court ultimately determined that that conviction was not a basis for the enhanced statutory penalties under 2252A, it acknowledged explicitly that was part of the quote, bigger picture here. And indeed, I think it informed the sentence a great deal. I think there's also a noted concern that in the intervening period between that hands-on sexual offense with a child and these current child pornography offenses, the defendants committed a litany of admittedly more minor criminal offenses. And those offenses, again, were more minor, but they evidenced an inability to comport his behavior with society's rules and a disrespect for the institutions that enforce them. And the district judge took countenance of that inability and that disrespect when it fashioned the sentence that Your Honors are considering today. Unless there are any other questions regarding the substance of Mr. Griffith's offense, I'll return the balance of my time to the court. Thank you. Thank you for that gift. Come on up, Mr. Taffy. All right. So, everyone, thank you. The case will be taken under advisement.